### DILLARD & COFFIN CO. *v.* JENNINGS.

[96 South. 307. No. 23268.]

FACTORS. *Peremptory instruction for factor suing for balance on advances held improperly refused under evidence.*

Where a cotton factor had advanced money on cotton shipped to him for sale, and after sale of the cotton had given the shipper proper credit for all the proceeds of such sales, and has sued for a balance due on such advances, and in such suit the evidence is undisputed that there was very little demand for cotton of the grade and staple of the cotton in question, that every

effort was made to sell the cotton at a fair price, that sales were made at every opportunity, and account sales regularly submitted to the shipper, who made no objection to the manner in which the cotton was being handled and sold, and there was no evidence whatever as to the grade or staple of the cotton, or that it could have been sold at a higher price than was obtained therefor, it was error to refuse a peremptory instruction requested by the plaintiff.

APPEAL from circuit court of Sunflower county.
HON. S. F. DAVIS, Judge.
Action by the Dillard & Coffin Company against J. W. Jennings.   Judgment for defendant, and plaintiff appeals. Reversed and judgment rendered.

*Cook, Roberson, Yerger & Cook,* for appellant.

If there ever was a case tried in any court in which we think the jury undoubtedly erred in arriving at their verdict, this is such a case, for there is not one particle of testimony in this whole record as to any single offer having been made for the cotton in question.   The evidence is clear and undisputed that Dillard & Coffin Company placed Jennings' cotton on their tables for sale, after being authorized by him so to do, their first instructions from Jennings having been to hold the cotton until further advice and their later instructions having been received by the first of December; that, for the great majority of the cotton they received splendid prices; that they regularly submitted to Mr. Jennings, account sales of their cotton; that he never advised them at any time of any dissatisfaction with the manner in which they were selling his cotton; that on two occasions, after he states that he had advised them to sell his cotton for what it would bring, he came into their office and while there each time drew the additional sum of one hundred dollars cash; that over three weeks after he says he advised them to sell his cotton for what they could get for it, that he needed the money, that he made an additional shipment of

twenty bales of cotton to them. Does this in any wise show a dissatisfaction with the manner in which his business was being handled by Dillard & Coffin Company? Would this not be a complete ratification of their acts, even had he instructed Dillard & Coffin Company to place his cotton on the market and sell it for what it would bring? Who knows what it would have brought?

There is no evidence as to the character of the cotton in question, except that some was good cotton, part indifferent, and part bad. That a whole lot of the cotton was the ordinary low grade cotton, being the last pickings of the crop. He appears to have been entirely satisfied with the good prices which were received, some of the cotton bringing forty, forty-five, fifty and fifty-odd cents a pound. There was no attempt made by Jennings to prove the kind of cotton within the possession of Dillard & Coffin Company at the time he says he instructed them to sell, nor does he testify himself, or offer any evidence as to the value of same, or what Dillard & Coffin Company could have gotten for same had they put it on the market and sold it at a forced sale for what they could get, nor does he show in any manner that it could have been sold for a sufficient sum to pay the full balance due Dillard & Coffin Company. We submit that the only proof that was ever attempted to be made was the attempt to prove that Dillard & Coffin could have sold in April, 1920, the balance of Jennings' cotton, consisting of about forty or forty-one bales, for the sum of twenty-five or twenty-five and one-half cents a pound, and that proof consisted simply of a surmise that Mr. Wakefield would have paid that for same; but the testimony is positive and uncontradicted, that Dillard & Coffin Company gave Wakefield the privilege of offering a big lot of cotton, including part of Jennings' cotton of sufficient grade to be included in the class of the cotton offered, to an eastern mill, at twenty-five and one-half cents a pound but that thereafter Wakefield never returned to make Dillard & Coffin Company an offer for the cotton. That is the testimony of every single witness

introduced in this case.   And, as stated heretofore, Mr. Jennings himself admitted and admits that Wakefield never in his presence made an offer for the cotton, but simply asked authority to be allowed to offer a large lot of cotton to an eastern mill.

Mr. Jennings stated that Mr. Yerger stated that he had no cotton worth less than thirty cents a pound, but Mr. Yerger on the contrary states, and Mr. Wakefield also states that he, Mr. Wakefield, was granted permission by Mr. Yerger at the time in question, to offer the lot of cotton referred to by Mr. Jennings to an eastern mill, for sale at twenty-five and one-half cents per pound.   So we say that with the facts being uncontradicted that the factor sold this cotton in the ordinary course of business, just as rapidly as possible and at the very best prices obtainable, after being authorized to sell; that all of this was done with the full knowledge of Mr. Jennings as to the manner in which his cotton was being handled, that even had he written Dillard & Coffin Company, as claimed by him, to sell his cotton, in January, 1920, for what they could get, there being no proof of any kind or character that it could have been sold or a sufficient amount to pay the indebtedness due Dillard & Coffin Company, Jennings has utterly failed in his defense, and in our opinion this court cannot and will not hesitate a second in reversing the judgment of the lower court, and in entering judgment here in favor of the appellant, for the full sum sued for, together with interest thereon and all costs.

*Wm. P. Searcy,* for appellee.

While it is true that Mr. Jennings' evidence was the only evidence offered by the defendant in the lower court and the appellee here, does it fail to substantiate his defense?   Is there any doubt from the record that Mr. Jennings instructed the appellants to sell his cotton?   Is there any doubt from the record in the case that the appellants, the said Dillard & Coffin Company could have sold the

cotton for more than enough to have paid them? Was the jury justified in rendering a verdict for the defendant? Did the trial court commit error in refusing to grant peremptory instructions for the plaintiff? On all these facts, they made up their verdict; and in my opinion no reversible error was committed, for they were the sole judges of the same and their verdict which was based upon the facts and the law as given them by the court, which was agreed upon by all parties, should not be disturbed by this court and I respectfully submit that the judgment of the lower court should be affirmed.

COOK, J., delivered the opinion of the court.

The plaintiff, Dillard & Coffin Company, instituted suit in the circuit court of Sunflower county against the defendant, J. W. Jennings, to recover from him a balance of one thousand one hundred ninety-nine dollars and ninety cents and interest, alleged to be due for advances on certain cotton which the defendant had shipped to plaintiff for sale, and from a judgment for the defendant, this appeal was prosecuted.

On November 21, 1919, the appellee shipped to the appellant forty-seven bales of cotton, and thereafter continued to make shipments during the cotton season of 1919 and 1920 until he had shipped a total of ninety-nine bales, and the appellant advanced to appellee on this cotton the sum of fourteen thousand four hundred dollars. This cotton was sold by appellant in lots at various times, and the proceeds credited to the account of appellee, the balance of one thousand one hundred ninety-nine dollars and ninety cents sued for being the difference between the amount received for the cotton and the amount advanced to appellee by appellant.

The appellee defended this suit upon the ground that he had instructed appellant to sell all his cotton at any price obtainable, and that appellant had an offer for the cotton which, if it had been accepted, would have paid his

account in full, and which would probably have left a balance due him instead of a deficit of the amount sued for.

George Yerger, vice president and manager of appellant, testified that during the season of 1919-20 the demand was almost entirely for the better grades of cotton and the longer lengths of staple, and for a long period no bids could be obtained on the shorter lengths and lower grades; that, after appellee authorized appellant to begin sales of his cotton on December 1, 1919, the samples thereof were placed on the sales tables and offered for sale; that efforts were made every day to sell the same, and practically no bids were refused until all the cotton was sold; that a large part of appellee's cotton was sold at excellent prices; that appellant did not receive a letter from appellee, dated January 28, 1920, instructing them to sell his cotton at any price that could be secured for it, and that no such instructions were ever received by appellant; that during the spring of 1920 J. S. Wakefield asked permission to offer to some eastern mills a lot of five hundred or six hundred bales; that Wakefield did offer the cotton to buyers at different times, but appellant was never able to secure a bid from Wakefield, and that he never at any time made an offer for the lot of cotton, and that, notwithstanding the fact that they were constantly endeavoring to make sales, they were unable to secure buyers, and this was the only reason the cotton was not sold earlier.    Mr. Paul Dillard, president of the appellant company, testified to substantially the same facts.

J. S. Wakefield, a cotton buyer, testified that some time during the spring of 1920 he requested Mr. Gwynne Yerger to permit him to offer five or six hundred bales of cotton to an eastern mill at twenty-five and one-half cents per pound, but that he never at any time made an offer for the cotton at that or any other price.    He denied that he ever offered Mr. Yerger twenty-five cents per pound for appellee's cotton or for a lot of one hundred bales of cotton.

Appellee testified that on January 28, 1920, he mailed a letter to appellant directing that his cotton be sold for whatever price could be obtained therefor; that thereafter he was in appellant's office at a time when J. S. Wakefield was present, and made some inquiry in regard to the sale of a lot of cotton; that Wakefield stated that he wanted to find some cotton low enough in grade to be bought at twenty-five and one-half cents; that he had an order to fill, and desired to purchase several hundred bales; that Mr. Yerger informed him that he had no cotton that he could sell for less than thirty cents; that he (Jennings) instructed Yerger to sell all his cotton to Wakefield if he could get that price, but that Wakefield made no offer for the cotton. At the time of this interview with Wakefield, the appellant had about forty bales of cotton still unsold, but there is no evidence whatever as to the quality, grade, or staple of this cotton.

Counsel agree that the only question presented for decision is whether, under this testimony, the appellant was entitled to a peremptory instruction. The testimony that there was very little demand for cotton of the grade of appellee's cotton, that every effort to sell the cotton at a fair price was made, that sales were made at every opportunity, and account sales regularly submitted to appellee, that appellee never advised appellant that he was dissatisfied with the manner in which his cotton was being handled and sold, is undisputed. Appellee appears to rely on the Wakefield incident to support his contention that the cotton could have been sold at a price of not less than twenty-five cents per pound, but all the witnesses, including appellee himself, testified that Wakefield made no offer for the cotton. There was no testimony whatever as to the grade or staple of the cotton, and none that it could have been sold at a higher price than was obtained therefor by appellant, and we think the peremptory instruction requested by appellant should have been granted.

The judgment of the court below will therefore be reversed, and judgment entered here for appellant for the sum sued for with accrued interest.

*Reversed, and judgment for appellant.*